UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-23188-CIV-SCOLA/MCALILEY

HUGO PENA, *et al.*,

    Plaintiffs,

v.

UNITED STATES COAST GUARD
SEVENTH DISTRICT, *et al.*,

    Defendants.
_____/

# REPORT AND RECOMMENDATION
## THAT LAWSUIT BE DISMISSED WITH PREJUDICE

Plaintiff Hugo Pena was criminally convicted in this Court in 2010, after a trial by jury. *See United States v. Pena, et al.,* Case No. 10-CR-60158-DIMITROULEAS. (hereafter CR-ECF No. __.) In this civil lawsuit, Pena claims his conviction was unlawfully procured by Defendants' fraudulent conduct, and he sues for a variety of remedies, none of which this Court is empowered to grant. I therefore recommend that the Court dismiss the lawsuit with prejudice, for the reasons set out below.

Defendants have filed the following motions: G&G Marine, Inc., G&G Shipping, Subsidiary I, LLC, and Coastal Shipping Holding, Inc. (the "G&G Defendants'") have filed a Motion to Dismiss Amended Complaint, (ECF No. 66), and a Motion to Strike Petition of Declaratory Judgment. (ECF No. 70). The United States Coast Guard has also filed a Motion to Dismiss. (ECF No. 75) (together, "the Motions"). The Motions have been fully-briefed, (ECF Nos. 67, 68, 72, 76, and 78), and the Honorable Robert N. Scola, Jr. referred

them to me for a report and recommendation. (ECF No. 48). I recommend that the Court grant the Motions.

## I. BACKGROUND

### A. The Criminal Case

Pena's criminal charges arose from his work, in 2010, as a classification surveyor and employee of HP Maritime Consultants, Inc., ("HP Maritime") also a Plaintiff in this lawsuit. At the relevant time, HP Maritime subcontracted for a classification society which was tasked with conducting a survey and inspection of the M/V Island Express, a 155-foot cargo ship that was registered in the Republic of Panama, and home ported in this District. (CR-ECF No. 31, ¶¶ 1, 4, 5).

The M/V Island Express was subject to a treaty, MARPOL,[1] which Congress implemented through the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901 *et. seq.* MARPOL regulates the discharge of oil from vessels at sea, and APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. (*Id.* at ¶6). MARPOL and APPS mandated that the M/V Island Express, *inter alia*: (1) have a functioning Oil Water Separator, and to use it to ensure that its overboard discharges of oil-contaminated water were less than 15 parts per million ("ppm"); (2) maintain an Oil Record Book and accurately record in it all overboard discharges of oil residue; (3) have its flag state (here, Panama) issue an International Oil

---

[1] MARPOL is the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978.

Pollution Prevention ("IOPP") Certificate that the ship complies with MARPOL, which obligation the flag state could delegate to a recognized classification society. (*Id.* at ¶¶ 6-9).

Panama engaged HP Maritime, by subcontract, to inspect the M/V Island Express, in April, 2010. Pena conducted that inspection and signed and issued an IOPP Certificate, that verified the vessel's compliance with MARPOL. (*Id.* Count 1, ¶ 11, Counts 27, 28). In fact, at the time of that inspection, and for several months prior, the Oil Water Separator on the M/V Island Express was inoperable, and the ship's crew, at the direction of its officers, directly pumped oil-contaminated waters overboard, in violation of MARPOL and APPS. (*Id.* at ¶¶ 4-6).

The United States Coast Guard discovered this during its inspection of the ship the following month. (CR-ECF 1, at 5-6, *Criminal Complaint*). A Coast Guard inspector questioned Pena at the time, and Pena admitted that he did not survey the Oil Water Separator before he issued the IOPP Certificate, because the vessel's chief engineer had told him it was inoperable. (*Id.* at 6-7).

A grand jury charged Pena and HP Maritime, by Superseding Indictment, in June of 2010, with: (1) conspiracy to commit an offense against the United States (by knowingly failing to maintain an accurate Oil Record Book on board the M/V Island Express I), in violation of 18 U.S.C. 371 (Count 1); (2) violation of MARPOL (by failing to conduct a complete inspection of the vessel), in violation of 33 U.S.C. 1908(a) (Count 27); and (3) making a false official statement (that the ship complied with MARPOL), in violation of 18 U.S.C. 1001(a)(2) (Count 28). (Cr. ECF No. 31). The Superseding Indictment also

brought charges against the ship's captain and chief engineer. (*Id.*). Count 1 was dismissed, and a jury found Pena guilty of Counts 27 and 28. (Cr. ECF Nos. 117). The Court sentenced Pena to concurrent five-year sentences of probation. (Cr. ECF No. 142).[2] Pena has completed his sentence. (*Id.* at 187).

### B. This Civil Lawsuit

The Amended Complaint was filed on behalf of Pena and HP Maritime. Pena represents himself in this action, and no attorney has entered an appearance on behalf of HP Maritime. Early in this lawsuit the Court advised Plaintiffs that HP Maritime could only proceed in this lawsuit if represented by counsel, and that Pena, who is not a lawyer, cannot act as the company's lawyer. (ECF No. 14).[3] HP Maritime's unrepresented status is an independent and necessary basis for dismissal of its claims. For simplicity, I refer here to a singular "Plaintiff."

The Amended Complaint is confusing and difficult to follow. The Court can, nonetheless, understand what is necessary to resolve the Motions and to assess the validity of the lawsuit. In particular, Plaintiff brings "an action for damages pursuant to 42 U.S.C. §§ 1983 and 1985" against the United States Coast Guard ("Coast Guard") and the G&G Defendants. (ECF No. 62 at ¶ 11). Plaintiff alleges that the G&G Defendants were the

---

[2] HP Maritime was found guilty of Counts 27 and 28, however the Court, on the government's motion, later dismissed those charges. (*Id.* at 116, 141, 145).

[3] "The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se,* and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (citation omitted).

owners, vessel operation company, and vessel agency responsible for the M/V Island Express I. (ECF No. 62 at ¶¶ 8-10). Plaintiff generally alleges that the Coast Guard and the G&G Defendants conspired, and together engaged in fraud, and thus brought about Plaintiff's unlawful criminal conviction. (*See, e.g*. ECF No. 62 at ¶¶ 24-29). Plaintiff asks this Court to (1) vacate his criminal conviction; (2) award him compensatory and punitive damages; and (3) enjoin the Coast Guard from "further unconstitutional prosecutions." (ECF No. 62 at ¶ 4).

Plaintiff also filed a Petition for Declaratory Judgment. (ECF No. 69). Therein, Plaintiff asks the Court to "pronounce Defendant 2 (the G&G Defendants) responsible for this fraud upon the court and obtain the Plaintiff relief or either in the form of damages or injunctions." (*Id.* at 5).

## II.   ANALYSIS

### A.   Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a)(2) and (3). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, the court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Edwards v. Prime Inc.,* 602 F.3d 1276, 1291 (11th Cir. 2010). Where the relief sought by the plaintiff is unavailable as a matter of law, dismissal is appropriate. *See Schweiker v. Chilicky*, 487 U.S. 412, 429 (1988).

1. Plaintiff Fails to State a Claim Under 42 U.S.C. §§ 1983 or 1985

Plaintiff purports to sue Defendants under 42 U.S.C. §§ 1983 and 1985(3).[4] (ECF No. 62 at ¶ 11). Section 1983 provides a cause of action in favor of all persons who are subjected to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by those acting under color of state law. 42 U.S.C. § 1983. Section 1985(3) provides a private right of action where two or more persons conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . . " 42 U.S.C. § 1985(3).

Liability under both §§ 1983 and 1985(3) is confined to state action taken in violation of federal or constitutional rights. *Dye v. U.S.*, 516 F. Supp. 2d 61, 71 (D.D.C.

---

[4] The Amended Complaint does not specify the subsection of §1985 Plaintiff sues upon. The Amended Complaint does allege a "conspiracy to violate his civil rights" (ECF No. 62 at ¶11), and in his Opposition to Motion to Dismiss Plaintiff quotes the language of § 1985(3). (ECF No. 67 at 9, ¶ 26), ("With the purpose of depriving Plaintiff of the equal protection of the laws, or of equal

2007) ("[42 U.S.C. §§ 1983 and 1985(3) neither authorize suits challenging actions taken under color of *federal* law, nor waive the United States' sovereign immunity. Both statutes are addressed to state action, not federal action. . . ." (quotations and citations omitted)). *See also Meyer v. Reno*, 911 F. Supp. 11, 14 n.1 (D.D.C. 1996) ("It is well established that 42 U.S.C. § 1983, which provides a cause of action for violations of constitutional rights accomplished under color of state law, does not provide a basis for suit for actions taken under color of federal law." *(citing Stonecipher v. Bray,* 653 F.2d 398 (9th Cir. 1981), *cert. denied,* 454 U.S. 1145 (1982); and *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir. 1980)); *Baker v. McDonald's Corp.*, 686 F. Supp. 1474, 1480 (S.D. Fla. 1987), aff'd, 865 F.2d 1272 (11th Cir. 1988) ("In order to prevail on his [42 U.S.C. 1985(3) claim] . . . the plaintiff must show state action; i.e., a conspiracy with state employees or officials (state actors).").

Plaintiff's claims arise from his federal prosecution and conviction. The Amended Complaint contains no allegations of any conduct taken under color of state law, nor any basis to infer such conduct.[5] Plaintiff thus fails to state a claim pursuant to 42 U.S.C. §§ 1983 or 1985(3).

---

privileges and immunities under the law. . . ."). The Court construes Plaintiff's claim as one under § 1985(3).

[5] The Supreme Court has recognized very limited circumstances in which §1985(3) protects against purely private conspiracies, that do not involve state action, but those circumstances are limited to conspiracies "aimed at interfering with rights . . . protected against private, as well as official encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993) (citation omitted). The Bray Court noted that only the Thirteenth Amendment right to be free from involuntary servitude and right of interstate travel have been recognized as rights protected against private encroachment. *Id.* Plaintiff's § 1985(3) claim asserts violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments. (ECF No. 62, ¶11; 67 ¶24). These amendments do not protect against

### 2. The Relief Sought Is Not Available

The Amended Complaint must also be dismissed because the following claims for relief are unavailable as a matter of law. First, Plaintiff's request that this Court vacate his conviction cannot be achieved through this civil action. Second, Plaintiff sues for damages, under §1983, for his criminal conviction, although such a claim could arise only if Plaintiff's conviction had been invalidated. Last, Plaintiff asks the Court to "enjoin [the] USCG from further unconstitutional prosecutions to American Citizen, in cases in which Shipping Owners, Vessel Operation Companies has a financial interest and are liable for their actions," and this too, is beyond the Court's authority. (ECF No. 62 at ¶ 4). I separately address these requests for relief.

#### a) Rule 60(d)(3)

Plaintiff invokes Rule 60(d)(3) as authority for this Court to vacate his conviction. (ECF No. 62, at 1, 15 ¶ 42; 67 at 7). Rule 60 applies only to civil cases, and does not empower this Court to vacate a criminal conviction. FED. R. CIV. P. 60; *United States v. Ford*, 677 Fed. App'x 628, 628 (11th Cir. 2017) (citations omitted). Plaintiff previously petitioned Judge Dimitrouleas, who presided over his criminal case, to vacate Plaintiff's conviction under Rule 60(d)(3). Judge Dimitrouleas declined to do so, and advised Plaintiff: "Rule 60(d)(3), Fed. R. Civ. P., allows a court to set aside a civil judgment for

---

private infringement and §1985(3) does not apply to purely private conspiracies alleging violation of these rights.

8

fraud on the court. It does not apply to a criminal conviction."(CR-ECF No. 187, at ¶ 6).[6] Plaintiff's claims for relief under Rule 60 are without merit.

        b)        <u>Monetary Damages are Not Available Pursuant to 42 U.S.C. § 1983</u>

Monetary damages could not be available here, under § 1983, unless Plaintiff's conviction had been previously invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87. Pena's conviction has not been invalidated. In fact, it was affirmed on direct appeal, *United States v. Pena*, 684 F.3d 1137 (11th Cir. 2012), and the Supreme Court denied certiorari, *Pena v. United States*, 568 U.S. 1088 (2013). Plaintiff could not recover damages on his § 1983 claim.

---

[6] To the extent Plaintiff seeks damages pursuant to Rule 60, this too is unavailable. *See* FED. R. CIV. P. 60; *United States v. $119, 980.00*, 680 F.2d 106, 107-08 (11th Cir. 1982) (Rule 60(b) does not provide for affirmative relief beyond setting aside prior civil order).

### c) Plaintiff Lacks Standing to Seek Injunctive Relief

Plaintiff asks this Court to "enjoin the USCG . . . from further unconstitutional prosecutions to American Citizen, in cases in which Shipping Owners, Vessel Operation Companies has a financial interest and are liable for their actions." (ECF No. 62 at ¶ 4). Plaintiff must articulate a future injury to establish standing to seek injunctive relief. *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983). Injunctive relief may only be granted where a party faces a "continuing present injury or real and immediate threat of repeated injury." *Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir. 1984), *abrogated on other grounds by Bass v. Perrin*, 170 F.3d 1312, 1318 n.9 (1999).

Even if Plaintiff were able to establish irregularities or fraud in connection with his criminal prosecution, "[p]ast exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief. . . . " *Id.* The potential for future harm to unidentified other individuals does not implicate any present injury or real and immediate threat of repeated injury to the Plaintiff, especially given Plaintiff's request to enjoin future unjust prosecutions of others. Given the lack of any present injury or real and immediate threat of repeated injury, Plaintiff lacks standing to seek injunctive relief and his request for such relief must be dismissed.

### B. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Constitutional Claims for Damages Against the Coast Guard

As regards Plaintiff's claims against the Coast Guard, the United States has not waived its sovereign immunity from suit for money damages arising from constitutional violations. *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) (citations

omitted); *see also Jones v. National Communication and Surveillance Networks*, 409 F. Supp. 2d 456, 466 (S.D.N.Y 2006) ("The U.S. government has not waived its sovereign immunity for claims under Sections 1981 to 1986 of Title 42." (citation omitted)). This Court therefore lacks subject matter jurisdiction over Plaintiff's claims against the Coast Guard, and those claims must be dismissed. FED. R. CIV. P. 12(b)(1).

### C. Plaintiff Fails to State a Claim for Declaratory Relief

After he filed his Amended Complaint, Plaintiff filed a Petition for Declaratory Judgment. (ECF No. 69). It appears Plaintiff wants to amend his complaint to add a claim for declaratory relief. This Petition is procedurally improper and should be dismissed for that reason. I nonetheless address the merits, so that Plaintiff understands that had he included this demand in his complaint, it would still fail.

Plaintiff asks the Court to "reexamine [the Criminal Action] . . . [and] pronounce Defendant 2 (the G&G Defendants) responsible for this fraud and relief the Plaintiff or in the form of either damages or injunctions." (ECF No. 69 at ¶ 18). Declaratory relief is not available here. "The point of a declaratory judgment is to permit actual controversies to be settled before they ripen into violations of law, not to adjudicate past conduct." *Great Lakes Reinsurance (UK) PLC v. TLU Limited,* 07–61259–Civ, 2008 WL 828122 (S.D. Fla. Mar. 27, 2008) (quotations and citations omitted).

Plaintiff's claims that Defendants caused his unjust conviction by fraud is highly disputed. This lawsuit calls upon the Court to make a factual determination regarding past conduct. There is no current legal right or obligation between the parties that is in dispute – which is what a declaratory judgment might address. Also, a declaratory judgment here

11

would be duplicative to Plaintiffs' damages claims, and therefore unnecessary. *See, e.g. Sierra Equity Group, Inc. v. White Oak Equity Partners,* 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009) (dismissing declaratory judgment claim that asked the Court to make factual determinations related to past conduct and would not "lead to a change in conduct by either party in order to conform their behavior to the law or minimize the danger of future monetary loss by the parties.").

For these reasons, I recommend that the Court deny Plaintiff's Petition for Declaratory Judgment. (ECF No. 69).

## III. THE G&G DEFENDANTS' REQUEST FOR AWARD OF ATTORNEYS' FEES AND COSTS

Title 42 U.S.C. § 1988(b) provides, in part, that "[i]n any action or proceeding to enforce a provision of [§§ 1981 through 1986 of Title 42, among other statutes], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court, in *Christianburg Garment Co. v. EEOC,* 434 U.S. 412 (1978), considered a similar prevailing party attorneys fee provision in Title VII, and set out a standard for the award of fees to a prevailing defendant:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.
>
> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

434 U.S. at 412, 421–22 (1978). The Court extended that standard to attorneys fees awards under §1988(b). *Hughes v. Rowe,* 449 U.S. 5, 14 (1980). The Eleventh Circuit has identified three factors to consider in determining whether an action was frivolous, so as to justify an award of attorney's fees to the prevailing defendant: whether (1) the plaintiff established a prima facie case; (2) the defendant offered to settle; and (3) the trial court dismissed the case prior to trial. *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir. 1985).

Courts are far less inclined to award attorneys fees against a losing *pro se* plaintiff. *Hughes*, 449 U.S. at 15 (attorney's fees should rarely be awarded against uncounseled prisoner plaintiffs because an unrepresented litigant should not be punished for his failure to recognize subtle legal deficiencies in his claims); *Miller v. Los Angeles Count Bd. of Educ.,* 827 F.2d 617, 620 (9th Cir. 1987) ("pro se plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim"). Attorney's fees may be appropriate where a *pro se* plaintiff continues to bring claims that were previously found to be frivolous, but absent such extreme conduct, courts are less likely to award attorney's fees against a *pro se* plaintiff who may be unable to recognize what constitutes a frivolous complaint. *Id.,* at 620.

The G&G Defendants have asked the Court to award them the attorneys' fees and costs they incurred in defending against this action. (ECF No. 66, at 18; 70 at 13). The Court is not unsympathetic to this request. Plaintiff certainly has failed to establish a prima facie case. Yet his claims mostly fail on sophisticated legal concepts that a nonlawyer is ill equipped to recognize. In addition, the claims and arguments raised in this action are

13

mostly distinguishable from those he raised in the criminal case, and Plaintiff has not previously filed a civil action against the Defendants. On this record, I recommend that the Court deny the G&G Defendants' request for fees.

## IV. RECOMMENDATIONS

Based on the foregoing, I **RECOMMEND** that the Court (1) **GRANT** Defendants' Motions, (ECF No. 66, 70, and 75), and **DISMISS WITH PREJUDICE** Plaintiff's Amended Complaint, (ECF No. 62), and (2) **DENY** Plaintiff's Petition for Declaratory Judgment, (ECF No. 69). I further **RECOMMEND** that the Court decline the G&G Defendants' request for an award of their attorneys fees and cost, and that the Court deny all other pending motions as moot.

## V. OBJECTIONS

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Robert N. Scola, Jr., who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1 (2016).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 2nd day of October, 2019.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Robert N. Scola, Jr.
     Counsel of record